Case number 315-0850, Raul Mendoza, appellant by Terry Dodds v. Peoria Speakeasy, Inc., doing business as Big Al Speakeasy, accolade by John Nakara. Mr. Dodds. Thank you. Please record, counsel. Let me first begin by saying that one of my biggest regrets in this case, and there are others, of course, and all trial attorneys have them, but my biggest regret in this case is not asking for a directed verdict on the issue of intoxication in the elements instruction. I think it was clear from the evidence that we had proven each and every element of the instruction, and although I don't think it would have been granted my request for a directed verdict on that issue, it's certainly something that I wish I would have done. The biggest reason I think that we're here, though, is the provocation defense that I filed pre-trial motions about, earnestly argued against both prior to submission to the jury and before, and I think the reason for that is that the best argument as to why that defense should not have been allowed, and I don't think it's been argued in front of the appellate court before, is that the Dram Shop Act is a statutorily created cause of action. It also imposes strict liability, and therefore, common law defenses are not allowed. Well, let me ask you this. It seems to be your position, correct me if I'm wrong, if you see a drunk walking down the street, you can pound the snot out of him, and if he hits you back, you can sue the Dram Shop, and the Dram Shop can't say he hit me first. Well, I understand what you're saying and what you're arguing, and I certainly agree. The obvious answer to that seems to be that your position. I certainly don't think you're going to have too many cases where that's going to be the instance, but I guess statutorily, yes. I mean, there are no common law defenses. It is strict liability, so therefore, I think the answer is yes, he would have a cause of action. Now, as I've also stated in my reply brief, the legislature certainly understands what a provocation defense is by way of example, the Animal Control Act, which I cited in my reply brief, so we can't argue that the legislature didn't know how to create that statutory defense. So I think that's the best argument as to why the provocation defense should not have been given, aside from the other arguments that have been made previously before the appellate courts. And again, I don't think it's been argued before. It's a strict liability statute. It's been rewritten. Certainly, the legislature could have changed the statute. They did not. Another reason that we cited in our brief is that the IPI for that provocation defense has been missing from the pattern of jury searches for quite some time. If I got the facts right, at the time your client was bit, he had the AIP or maybe RIP, real intoxicated person, had him on the sidewalk in a headlock and was banging his head into the concrete. There was some testimony to that, yes. It wasn't even from your client, right? Well, he said he was hitting his head on the concrete in order to get his finger out of his mouth, so there is some dispute as to what actually occurred and how that came about. But the fact of the matter is that, you know, pursuant to the statute, I think that we proved our cause of action. I just want to say, you know, statutory construction, we're not supposed to give statutes absurd construction. True. You know, isn't it kind of absurd to think that the statute intends for somebody to be able to go out and attack a drunk and that the drunk hits back, that the dram shop's on the hook? Well, I think you're going to have a problem. I haven't really thought that through, perhaps unless you have, but just thinking about it now, I do think that you're not going to have that cause of action because if the defendant was found, I'm sorry, if the AIP, who was a party to the action, and I guess he wouldn't have to be necessarily, but if liability was not found for the plaintiff in that instance, then there would be no recovery. But the AIP is not a party to this action, right? True. He was dismissed. That's correct. Okay. So under that thing, I mean, isn't it absurd construction, and those facts to say that that's what the legislature intended, that you can go beat up drunks because they hit you back, that you can sue the dram shop? Well, there's often going to be disputes as to who started what and how a fight got started, and I understand your point. I guess another way of looking at it is that it is strict liability for a reason, and that is because in exchange for giving up common law causes of actions against the bars, they capped the statutory amount of recovery, and so it was kind of a tradeoff in that regard. I certainly understand the dilemma that you're raising, and I've certainly thought of it myself, not maybe to the degree that you have prior to today, but I think for those reasons, I think that the provocation defense should have been struck or stricken. I also don't think that the defendant in this instance, the dram, actually proved by a preponderance of the evidence that they should have been given that instruction. And if the court comes to that conclusion, then the other obvious issue that we have to deal with is this issue of liability pursuant to the statute for the IPI instruction, the 150.02 or the elements instruction. And I think if the court were to review this case, which I'm sure it has, I don't think that any reasonable juror could have come to the conclusion that the AIP, that we didn't meet those elements of the statute. He was clearly drunk by his own admission, by all the witnesses' admissions. He clearly got drunk from drinking at the defendant dram, and certainly it was a cause of the injuries to my client. So I think that if the court were to agree with us on the issue of the provocation defense that should have been stricken, then I think that judgment would not stand, and the verdict should be entered, and that the case should be remanded for damages. And then we also get into the other issue that was raised in the brief, which is this mitigation of damages issue, which I'll just touch briefly upon, and that is certainly I don't think that the courts have intended a 63-hour delay to be a situation where mitigation of damages is going to be an affirmative defense. Certainly I think the purpose of that defense is in a scenario such as where a plaintiff is told that he has to have surgery on his leg, otherwise he may walk with a limp for the rest of his life. He opts not to have that surgery and then tries to claim damages for the limp that he now has because he didn't have that surgery. I also don't think that in this particular instance that 63 hours was unreasonable, and the courts have for a long time have said that an injured person who from the circumstances might reasonably believe that his or her injury is going to be cured with time and rest, that he doesn't necessarily have to incur the expenses of medical treatment. And that's certainly what happened in this instance. My client believed that he was going to heal. Unfortunately, it did not work out that way, and he then had to have surgical intervention and had to have intravenous antibiotics given to him for over a period of time. Is the test what your client believed or what a reasonable person would believe? I believe it would be what a reasonable person would believe. But again, also, the defendant takes the plaintiff as he finds them. Well, that's the eggshell, Scott. I mean, if you mean dumb or the... To a degree, yes. I mean, isn't it generally understood by people that the human bite is probably one of the most dangerous bites other than a poisonous snake as far as infection and germs and stuff? Well, by the studies that we showed, and that was just by people who went to the hospital, 25% of people don't think that way. I'm not sure I would have went to the hospital had I got a human bite at first because when you look at it, it certainly looks like something that would heal on its own. We're also talking about an individual who was a football player for years who probably had a lot worse things happen to him than that and probably said, okay, well, you know, I'll go to the hospital if it gets worse, which he did. But I don't think this mitigation of damages instruction or this defense is proper in this circumstance. So I think that if the court were to agree with us to remand, I think that issue needs to be addressed before we can have a damages hearing. I have some other issues that I won't touch upon, but if there's any questions, I'll stand on the briefs. Thank you. Thank you, Mr. Dodd. At least court. Counsel. Well, there's no question here that the AIP was drunk, and that's about the end of where we agree about anything about this case. He was certainly drunk. We contest vigorously the fact that he necessarily got drunk by virtue of the alcohol that we served him. Let me start by saying that there's three claims of error here that have been alleged by the plaintiff on the issue of liability. All of those claims must fail because there was no special interrogatory tender. So we don't know whether the defense verdict was because the plaintiff failed to sustain his burden of proof with respect to whether we caused the intoxication, because keep in mind there were a total of five dram shops that were visited by this guy. We were the fourth of the fifth dram shops. He drank more at the other drams than he drank at our place, and a reasonable jury could conclude that we didn't cause his intoxication. The fact that the other dram shops weren't sued is not our problem, it's the plaintiff's problem. This case also could have failed for the plaintiff because the plaintiff failed to sustain his burden of proof on the issue of whether the intoxication caused the injury. Because even a sober person who's getting his head banged on the sidewalk is going to react in the way that the AIP did here by trying to save his life by doing whatever he could, which in this case happened to be to bite the plaintiff's hand. Much of the discussion here, much of the argument was made about the idea that provocation should be removed from the dram shop act or, excuse me, from dram shop litigation. Well, provocation has been a part of dram shop litigation for decades. It's part of the innocent suing doctrine that the Supreme Court has affirmed. Admittedly, the Supreme Court has never specifically looked at provocation. But of all the case law that we have regarding provocation, there's only one case that's ever said that provocation was not an affirmative defense and that was the Galleon case that came out of the Fifth Circuit, Fifth District, excuse me. And that case was specifically rejected by Justice Perry in a unanimous opinion in the case of Aiken v. J.R.'s Lounge. That case is still precedent. And as long as we're going to recognize stare decisis, that case still has to be followed. That case has also been followed, that is the Aiken decision, by the Second Circuit in the Gilman case. And two other cases from two different panels of the First District, or two different divisions of the First District, excuse me, yes, First District, have also cited the Aiken case with approval. So the idea of getting rid of provocation, Justice Schmidt, you hit it right on the head. If you get rid of it, then you will be presented with a circumstance where a person can go and accost a drunk and have the drunk, in self-defense, injure the person who accosted him, and the drunk shop is left holding the bag because the drunk has the self-defense that he can use, so he gets off. But the bar is supposed to then, in that circumstance, have to pay the damages of the guy who started the fight. You know, that's just wrong in any universe you care to be in. So the idea that there was insufficient evidence regarding the issue of provocation is really a specious argument. Out of the mouth of the defendant, or excuse me, the plaintiff himself, he admitted that when they came back for the second encounter, that he, the plaintiff, was the one who initiated the physical contact by pushing the AIP to the sidewalk, where he then jumps on the AIP and starts banging his head into the sidewalk. Now, there's no better proof than what comes out of the mouth of the person who's trying to recover here. But there was also other testimony that could be used to say that the plaintiff provoked the AIP when they first got together and he shoulder-checked him in front of Richards. Or that after walking away, the plaintiff then comes back to confront the obviously drunk AIP here. So there's plenty of evidence to sustain the provocation defense here. And any argument to the contrary really is ignoring a substantial portion of the record in this case. The mitigation instruction I really don't think you reach because unless there's liability, there's no occasion to consider damages. But just because counsel addressed it, I will just mention this, that the fact that 25% of people don't get treatment for a bite wound necessarily leads to the conclusion that 75% of people who have a human bite wound do go and get some kind of treatment within 24 hours. And the record is replete with the fact that both the plaintiff's friends and the police officer who came to investigate this thought that he needed medical treatment. The cop at least offered to take him to the hospital and both of his friends, looking at the record as I cite in the brief, thought that that wound needed medical attention, but the plaintiff for his own reasons chose to wait for 63 hours. Now, maybe he had valid reasons for waiting or not, but it was certainly an issue of fact that the jury ought to be allowed to determine if they were ever to look at this from the standpoint of having to consider damages. The giving of IPI 50.02, the issues instruction that shows what the elements of the offense are,  Number two, plaintiff did not offer any alternative instruction at the time of the instruction conference. Number three, the Supreme Court case of Kingston v. Turner, which is discussed in the comments to the IPI, make it clear that if such an instruction were to be tendered, that it would be refused, that it should be refused, because the Supreme Court did not want anybody to try to define what the concept of the liquor that caused the intoxication would be. And the IPI noted in its comments that pursuant to the Supreme Court's guidance, the word, quote, cause, close quote, in element three will remain unmodified and undefined. The last issue that was raised with respect to the liability thing here, in this case, was what I would call the PowerPoint slide, although it actually wasn't a slide, it was just a piece of paper that I had drafted up the night before, which I admit overstated the alcohol strength of some of the alcohol that was consumed at our place, according to the AIP. That was my bad, but it is not reversible error. The cases that we cited made clear that under these circumstances, and by these circumstances, I mean that I told the jury myself, on two occasions, that if their recollection of what I said about the evidence was wrong, they should go with their recollection. Plaintiff's counsel, in his rebuttal, called me to task for my misstatement and argued that there was no evidence in the record for the allegation of a 20-proof liquor that was consumed. And then, of course, the trial judge, both orally and in the written instructions, told the jury that to disregard any statement or argument of counsel that's not supported by the record. Several cases that I've cited in brief say that under those circumstances, any error with respect to a misstatement by counsel of the evidence in closing argument is not error. And in addition to that, it wasn't really that big a misstatement, simply because the size of the shots that were allegedly of this 20-proof, which wasn't really 20-proof alcohol, were smaller than the shots that are typically used in bars. So it's not that this was such a blatant misstatement of what the net effect of the alcohol consumed at our place was about. So, I'd be happy to answer any questions. I guess not. Thank you very much. Thank you. Your Honor, let me just address a few things that counsel brought up in his argument. You know, this issue of whether or not the AIP got intoxicated from the alcohol that was consumed at the dram shop is ridiculous. He drank 9 or 10 drinks. That's why it's so important about the demonstrative exhibit that he brought up, which is raised in the brief. It's so important because it was actually 40-proof. That was the only testimony which was 40-proof, which is double what was up for the jury to look at and observe for quite some time. 40-proof, as you know, most beers are, as I'm sure the Court may know, is 10-proof. So there's quite a leap from beer, which was consumed at these, most of what he consumed at the other drams was beer. So then we would get into an argument of de minimis amount of alcohol that he may have consumed at the other establishments. Should we have named them? Potentially. That's not really relevant today, but, you know, had I named them, they probably would have been out because he had a de minimis amount. There's no question that he had more than a de minimis amount at the defendant dram. There's no question at all. So to say that he didn't get intoxicated from the alcohol that he consumed at the defendant's dram is, you know, fantasy, quite frankly. And then, again, we get to the fact that by law, I think that we prove that portion of our case, and that judgment notwithstanding, the verb should have been entered and should be entered in this case, especially if the Court were to agree again that the provocation of defense should go bye-bye. And if the Court has reservations about that and says that provocation of defense should still be available to defendant drams, then I think we'd have to get into comparative negligence instructions, which, again, would not ordinarily be available in statutory causes of action such as this, but, you know, if we're going to allow common law defenses such as provocation, then I think we have to allow the comparative fault instructions. Well, did you offer a comparative fault instruction? No, I did not. I did not. And you knew they were giving a provocation instruction. Yes, I did. So what are we going to do about that now? True. But, again, I don't think it's a valid defense for the reasons I've said in my brief. And this issue of the special interrogatory or the waiver issue, certainly this Court has the authority to, and, again, I think we proved the case that where judgment notwithstanding, the verb should be entered anyway, but the Court does have the ability to look at that issue and say, well, the argument of the provocation permeated throughout the entirety of the trial, and, therefore, we've been prejudiced, and then it should be remanded for another jury. As to the damages, again, I also want to bring up the fact that there was no separation in the type of injury that he sustained. He sustained a bite wound. It wasn't like he got a different type of injury. That's another reason why I think the mitigation instruction should not be given. There was no separation between the type of injury that he sustained. It just got worse. And, also, with respect to that, as you raise... A bite injury is a hole in your skin, right? It's a puncture. Right. But a big part of his problem was infection, right?  And to go along with what he was arguing, just a moment, and what counsel was arguing, that statistics that we showed are only the people that reported to the emergency room. We don't know how many people, because there's no way to document, we don't know how many people who actually get bit by a human bite don't report to the hospital. There could be quite a number of more. We can't say that 75%, you know, go to the hospital. That's not accurate, because we don't know how many people don't go to the hospital. That's just from what we were able to glean from the studies. So, therefore, I think it was reasonable for him to wait, and take a wait-and-see approach, especially for the reasons that we talked about. That he didn't have insurance, and he thought he would heal on his own. One minute. I think that's all I have. So, if there aren't any other questions, I thank you for your time. Thank you. Thank you both for your argument today. I'm going to take this matter under advisement, to the fact that it was a written disposition. I'm going to ask you to make a short recess for the panel.